statutes prohibiting unreasonable discriminations in railroad rates, see *G. W. Ry. Co.* v. *Sutton,* L. R. 4 Eng. & Irish App. 226, in which all the earlier cases are collected. A contract by a railroad company to deliver all grain shipped in bulk over its road to a particular warehouse, is void as against persons not parties to it. *C. & N. W. Ry. Co.* v. *People,* 56 Ill. 365. Where grain had been shipped to Chicago, the company will not be permitted to charge one rate to one warehouse and a different rate to another in that city. *Vincent* v. *C. & A. R. Co.* 49 Ill. 33. An agreement by a railroad company to carry goods for certain persons at a cheaper rate than they will carry under the same conditions for others, is void as creating an illegal preference. *Messenger* v. *Penn. Co.* 36 N. J. Law, 407.

The express company cases, recently decided at St. Louis by Justice Miller, have perhaps gone as far as any cases yet decided in compelling railroad companies to afford all persons the equal use of their facilities. There it was held that a railroad company was not only bound to carry the goods, but was bound to furnish special cars for that purpose, to permit an express messenger to accompany and have charge of the goods, and that in case of dispute as to rates it was for the court to determine what was a reasonable rate. *Southern Express Co.* v. *St. L., etc., Ry. Co.* 10 Fed. Rep. 210, 869. For other cases to the effect that railroad companies must afford all persons or companies engaged in the express business equal and impartial facilities, see *Texas Exp. Co.* v. *Tex. & Pac. Ry. Co.* 6 Fed. Rep. 426; *Southern Exp. Co.* v. *Memphis, etc., R. R.,* 13 Cent. Law. J. 68; 12 Rep. 193; 8 Fed. Rep. 799; *Sandford* v. *Railroad Co.* 24 Pa. St. 378; *N. Eng. Exp. Co.* v. *Me. Cent. R. Co.* 57 Me. 188; *McDuffee* v. *Portland & Roch. R. Co.* 52 N. H. 430.—[Rep.

---

## McCan, Assignee, *v.* E. Conery & Son.[*]

*(Circuit Court, E. D. Louisiana. May 8, 1882.)*

### Limitations in Bankruptcy.

The pendency of a suit in chancery between the same parties on the same cause of action, which suit is afterwards dismissed for want of equity, does not interrupt or suspend the prescription or limitation provided by section 5057 of the Revised Statutes, and a subsequent action at law cannot be maintained by the assignee, instituted within two years after the dismissal of such chancery suit without prejudice, if it be instituted more than two years after the cause of action accrued to the assignee.

On Writ of Error to District Court in Bankruptcy.

*Joseph P. Hornor* and *W. S. Benedict,* for complainant.

*Charles B. Singleton, R. H. Browne, John H. Kennard, W. W. Howe, S. S. Prentiss,* and *H. H. Walsh,* for defendants.

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

PARDEE, C. J. This case is brought to this court on a writ of error to the district court taken by the defendants, who were condemned in that court in the sum of $2,500, with interest and costs. The petition was filed June 28, 1880, the plaintiff, McCan, averring that he qualified as assignee in bankruptcy of one' Montgomery on the fifth of April, 1876. The cause of action is stated to be against the defendants, Conery & Son, as sureties on the charter of the steamboat Seminole, from Montgomery to one Mitchell and others, in 1875, the cause of action accruing to Montgomery in June of that year, and accruing to and vesting in the plaintiff assignee on the fifth of April, 1876. It is further stated in the petition that, prior to plaintiff's election as assignee of Montgomery, certain creditors of Montgomery filed a bill in equity in the district court on their own behalf, and on behalf of all the creditors of Montgomery, for the preservation of the property of the bankrupt's estate, and other reasons, against Montgomery and a pretended transferee, and against said charterers, and Conery & Son as sureties, praying, among other things, for a judgment against Conery & Son for $2,500, as sureties on the charter-party, the breach of which was set forth. Also that plaintiff, after his qualification as assignee of Montgomery, caused himself to be substituted as party plaintiff, in place of the complaining creditors, and thereafter prosecuted the said suit; that said Conery & Son appeared and defended the said suit, which, after various proceedings, was dismissed as to said Conery & Son. The record shows that the dismissal was on May 27, 1880, and was for want of equity, and without prejudice.

The defendants appeared to defend this case, and filed the plea of prescription of two years, under the bankrupt act of 1867, (Rev. St. § 5057,) which provides that "no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when such cause of action accrued for or against such assignee." This plea was tried before a jury, and under the charge of the court was overruled by verdict. To the charges and refusals to charge of the judge three several bills of exception were taken. The defendants then answered, denying liability as sureties, because of breach of warranty as to seaworthiness of the Seminole, and a failure to comply with a condition precedent as to the adjustment of loss or damages within the time stipulated in the contract of suretyship.

On the trial, verdict was rendered against Conery & Son for the full amount claimed, counsel taking nine other bills of exception to the charges and refusals to charge the jury. In this court the following are the errors assigned:

(1) That the court below erred in its rulings on the question of prescription or limitation of two years, as more fully set forth in the three bills of exception, pages 40, 51, of the transcript.

(2) That the court erred in its rulings on the trial upon the merits of the case, as set forth in the nine bills of exception respectively found at pages 73 to 116 of the transcript.

(3) That the court erred in refusing a new trial as set forth, etc.

The first and second bills of exception show that the judge, on the trial of the plea before the jury, refused to instruct the jury that in a suit brought by an assignee in bankruptcy against a person having an adverse interest touching any property or right of property transferable to or vested in such assignee, the limitation of two years provided in section 5057, Rev. St., is absolute, and with no exception but in cases of fraud. The third bill shows that the judge did instruct the jury, on the trial of the plea of limitation of the action, as follows:

"If the jury find that an action for the recovery of the same thing which is here demanded was instituted by a creditor of P. C. Montgomery, and upon the appointment of the assignee (the plaintiff herein) he made himself a party plaintiff to that suit, which was diligently prosecuted in this court, and upon appeal in the circuit court of this district, as appears by the record, Nos. 10,-830, and 9,093 on the dockets of the district and circuit courts of this district; and if they further find that by a final decision in the circuit court, rendered upon such appeal, said suit was dismissed on the ground that it was not an equity suit, and that this suit was instituted within two years from the rendition of such decree,—then the jury will find for the plaintiff upon the exception."

The question raised by these three bills of exception, and the assignment of errors thereon, is whether the pendency of a suit in chancery between the same parties on the same cause of action, which suit is afterwards dismissed for want of equity, interrupts or suspends the prescription or limitation provided by section 5057 of the Revised Statutes; so that an action at law may be maintained by the assignee within two years after the dismissal of such chancery suit, and more than two years after the cause of action accrued to the assignee. If yes, the judge's charge and refusals to charge were correct. If no, then the instructions given were erroneous, and the jury were misled thereby on the trial of the exception of limitation. The

language of the statute makes no exception for any reason whatever. And this is explained and justified by the supreme court in the case of *Bailey* v. *Glover*, 21 Wall. 342.

The only exception that the courts have ever made, so far as I have been furnished with authorities, to the absolute terms of the statute, is on equitable principles in cases of concealed fraud.

In *Bailey* v. *Glover*, just cited, it is said:

"We hold that when there has been no negligence or laches on the part of the plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by or becomes known to the party suing, or those in privity with him."

The reasoning in the same case shows that no other exception can be made.

Of course the legislation of the various states, in regard to the interruption or suspension, cannot apply, the whole matter being within the control of congress. See *Peiper* v. *Hanner*, 5 N. B. R. 252. The limitation of the statute applies to all claims. See, also, *Gucister* v. *Sevier*, 33 Ark. 522; *Norton* v. *De Lavillebeuve*, 1 Woods, 163; *Payson* v. *Coffin*, 4 Dill. 386; *Walker* v. *Towner*, Id. 167; *Foreman* v. *Bigelow*, 18 N. B. R. 457.

The question in this case is then reduced to this: Whether the state of facts, as shown in the record and bills of exception, make such a case as, according to authority and the jurisprudence of the country, would interrupt the prescription fixed by the statute. The case made is where the assignee is diligently prosecuting his case to the best ability of his counsel, but in the wrong court, and he has been guilty of no negligence.

In *Harris* v. *Dennis* we find that "if an action on the case be brought within the limitation, and after the expiration thereof the plaintiff be nonsuited, the limitation act is a good plea to another action for the same cause." And this, too, when the statute provides an exception in favor of plaintiffs whose judgments are reversed for error, allowing a new action to be brought within one year. *Roland* v. *Logan*, 1 Serg. & R. 236.

"The provision in the statute of limitations, which authorizes a plaintiff to commence a new action within a year after the reversal of a judgment in his favor, etc., notwithstanding the time specified as a bar has elapsed during the pendency of the suit, will not authorize the institution of an action at law under similar circumstances after the dismissal of a bill in chancery touching the same subject-matter." 18 Ala. 307.

"Under the act of congress, 1841, limiting suits by or against assignees or bankrupts to two years after cause of action accrued, a bill filed after two years cannot be regarded as an amendment to one of the same cause of action filed before the expiration of the two years, but dismissed by the court." *Clark* v. *Hackett*, 1 Cliff. 270.

In *Barker* v. *Millard,* where the holder of a note was stayed by injunction from prosecuting the same, he was not allowed to plead the time he was so enjoined as an interruption of the statute. 16 Wend. 572.

*Gray* v. *Berryman*, 4 Mumf. (Va.) 181, seems to be identical with the case under consideration. There it was held: "If a bill in chancery be dismissed on the ground that the plaintiff's case is exclusively cognizable at law, he cannot plead the pendency of such suit in chancery to prevent the act of limitations from being a bar to his subsequent recovery at law." To the same purpose see *Callis* v. *Woddy*, 2 Mumf. 511; *Donnell* v. *Gatchell*, 38 Me. 217; *Cogdell* v. *Exurn*, 10 N. B. R. 327; *Bank* v. *Sherman*, 101 U. S. 405.

In *Baily* v. *Glover, supra,* it is said:

"It is obviously one of the purposes of the bankrupt law that there should be a speedy disposition of the bankrupt's assets. This is only second in importance to securing equality of distribution.

"The act is filled with provisions for quick and summary disposal of questions arising in the progress of the case, without regard to usual modes of trial attended by some necessary delay. Appeals in some instances must be taken within 10 days, and provisions are made to facilitate sales of property, compromises of doubtful claims, and generally for the early discharge of the bankrupt and the speedy settlement of his estate. It is a wise policy, and if those who administer the law could be induced to act upon its spirit, it would do much to make the statute more acceptable than it is. But, instead of this, the inferior courts are filled with suits by or against assignees, each of whom, as soon as appointed, retains an attorney, if property enough comes into his hands to pay one, and then, instead of speedy sales, reasonable compromises, and efforts to adjust differences, the estate is wasted in profitless litigation and the fees of officers who execute the law.

"To prevent this as much as possible, congress has said to the assignee, 'You shall commence no suit two years after the cause of action has accrued to you, nor shall you be harassed by suits when the cause of action has accrued more than two years against you.' "

From these authorities, and the arguments in support of them, it seems clear to me, upon both principle and authority, that the matters set out by plaintiff in this case, as shown by the record, do not, and ought not to, interrupt the prescription or limitation fixed by the statute for actions brought by or against an assignee in bankruptcy.

From this view, the charge of the judge to the jury, on the trial of the exception, was erroneous, and must be so adjudged. The questions raised by the other bills of exception need not be considered, as the case must be reversed and remanded.

Let a judgment be entered in this cause reversing the judgments rendered in the district court on the merits, and on the exception of prescription, and the verdicts of the juries rendered therein, and remanding the cause to the said district court, with directions to the district court to award another trial on the exception of prescription, or limitation of the action.